STATE OF VERMONT

ENVIRONMENTAL COURT

Appeal of Sisters and Brothers Investment Group, LLP     } Docket No. 281-12-02 Vtec

## Decision and Order

Appellant Sisters and Brothers Investment Group, LLP appealed from a decision of the Development Review Board (DRB) of the Town of Colchester, denying its application for conditional use approval of a convenience store with gasoline sales on its property at 162 and 166 College Parkway in the General Development 1 (GD-1) zoning district. Appellant-Applicant is represented by David H. Greenberg, Esq.; the Town is represented by Richard C. Whittlesey, Esq.

The Court first ruled on summary judgment that a convenience store with gasoline sales is not a permitted use in the GD-1 district, but that the application may go forward under §1203, and that we would proceed to the evidentiary hearing on whether the proposal qualifies for consideration as an 'other commercial use' under §1203.1. Prior to that evidentiary hearing, the parties agreed that the §1203.1 threshold question of whether the proposed convenience store with gasoline sales is of the 'same general character' as the other uses listed in the Table of Permissible Uses for the GD-1 district must be decided first, before moving forward to take evidence either on the remainder of §1203.1 (whether the proposal will or will not be detrimental to other uses within the district or the adjoining land uses) or on the conditional use standards. The parties also agreed that if the Court were to go forward to hear the merits of the conditional use standards, only criteria (b), (d), and (e) of §1804.1 would be before the Court, as the Town does not contest that criteria (a) and (f) are met and, if the project were approved under §1804.1(b), (d), and (e), the application would then have to go back to the DRB for it to hear evidence on criterion §1804.1(c) (traffic).

An evidentiary hearing was held on the §1203.1 threshold question before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written

1

memoranda and requests for findings. Upon consideration of the evidence and the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

To consider an application for conditional use approval under §1203.1 as an 'other commercial use,' the Court must first find that "such use is of the same general character of those permitted" in the GD-1 district. We decided on summary judgment that the phrase "those permitted" has the sense of those 'allowed' in the district, whether as 'permitted' uses or as 'conditional' uses.

We also decided on the record at the outset of the evidentiary hearing that it does not include other uses, such as a neighboring convenience store with gasoline sales, that are already non-conforming uses in the district. This interpretation is now further supported by the amendment to the enabling statute, 24 V.S.A. §4414(3)(a)(ii)[1], that the character of the area is defined by the 'purposes of the zoning district within which the project is located' and the policies and standards in the municipal plan. That is, when examining the character of the area in connection with a conditional use application, the DRB is directed not to consider existing non-conforming uses that conflict with the character of the area as designed or planned for by the municipality.

---

[1] 2004, No. 115, §95.

Appellant-Applicant proposes to construct a convenience store with a 3,600 square foot footprint, on an existing lot on Vermont Route 15[2] in the GD-1 zoning district. The convenience store building is proposed to have approximately 2,000 square feet of sales area open to the public. The convenience store is proposed to have associated with it three gasoline dispensers under a canopy, providing six gasoline fueling stations (places for six vehicles) at the dispensers.

First, it appears to the Court that the convenience store element of the proposal exceeds the size eligible to be considered as a convenience store. The regulations define 'convenience store as having a 'gross floor area' of less than 2,000 square feet. Appellant-Applicant appears instead to have used the concept of 'useable floor area," which is clearly defined, both in the definition ('floor area, useable') and in Figure III illustrating 'floor area' at the end of Article I, as being used only for the purpose of computing parking requirements. While 'useable' floor area is exclusive of the storage areas and bathrooms, 'total' floor area is shown on that diagram as including all the interior floor area of the building, measured from the interior faces of the exterior walls. In this context, it is only reasonable for 'gross' floor area to be the equivalent of 'total' floor area, rather than 'usable' floor area, for two reasons. First, the term 'gross' is usually distinguished from the term 'net,' meaning the amount resulting after something is deducted, and 'usable' floor area is defined as the area left after areas used for storage, processing, utilities and sanitary facilities are deducted. Second, if the drafters of the regulations had intended 'gross' floor area to mean 'usable' floor area, they could have used the term 'usable floor

---

[2] The property has frontage on Route 15 and formerly also had access by an existing twelve-foot-wide right-of-way from Johnson Avenue.

area' which was already defined in the regulations.[3]

For a convenience store with gasoline sales, the sale of gasoline represents approximately 30% to 40% of the gross dollar amount of sales. However, the profit generated by the facility is largely from the convenience store and deli items sold in the store. Appellant-Applicant relies on gasoline sales to bring convenience store and deli customers into the store. That is, a convenience store without gasoline sales would not succeed in bringing a sufficient number of customers into the convenience store to make the convenience store commercially viable on its own.

---

[3] We also note that although the cover letter to the application describes it as "a new 3,600 s.f convenience store and gas station," giving equal weight to the two functions, the 'Estimated Traffic Impacts' page of the application used the Institute of Transportation Engineers category 845: "Gasoline/Service Station with Convenience Market."

In order to determine whether a 3,600 square foot convenience store together with a six-fueling-position gas station is "of the same general character" as other uses allowed in the GD-1 zoning district, we must first examine the salient characteristics of the commercial uses that are allowed as compared with those not allowed in the GD-1 district[4].

The purpose of the GD-1 district is "to provide for residential and compatible commercial and light manufacturing activities in an environment featuring convenience of required facilities and essential services." §1200. The primary test is whether a potential commercial use is compatible with residential uses.

---

[4] We make this analysis without examining the de facto characteristics of the surrounding uses along Route 15. The remedy for Appellant-Applicant, if the existing uses on the stretch of Route 15 in which this property is located are indeed primarily automobile-oriented, is to seek an amendment to the zoning district applicable in this area (an amendment to the zoning map). We note that if such an amendment were proposed for public hearing, Appellant-Applicant could apply during the pendency of the proposed regulation. See former 24 V.S.A. §4443(d).

Looking at the categories of commercial and light industrial uses[5] allowed in the GD-1 district, one salient characteristic of the allowed uses is that, with the exception of a few listed uses discussed below, the allowed uses all must take place entirely within an enclosed building and do not involve either outdoor activity in itself, or involve high-volume vehicular activity together with outdoor activity. For example, under use category 12.000, veterinarians are allowed in the GD-1 district, while kennels, which presumably have outdoor runs for dogs, are not allowed. Another salient characteristic is that none of the allowed uses, with the assumed exception of marinas and marine-related sales, sells gasoline (or diesel fuel) for placement in customers' vehicles.

None of the allowed uses in the GD-1 district within use categories 2.000 (sales and rental of goods, merchandise and equipment), 10.000 (storage and parking), or 19.000 (dry cleaner, laundromat) involves outdoor activity. A 3,600 square foot convenience store together with a six-fueling-position gas station is not "of the same general character" as the few remaining allowed commercial or light industrial uses that allow outdoor activity. We take each of the subcategories in turn.

The only allowed uses in the GD-1 district in the 3.000 (office, clerical, etc.) use category that also have an outdoor component are banks with drive-in windows, which are compatible with residential activities in the district. Customers' use of bank drive-up windows is not characterized by high-volume, constant vehicular activity.

The only allowed uses in the GD-1 district in the 6.000 (recreation, amusement, entertainment) use category that also have an outdoor component are outdoor recreational facilities, such as tennis courts and golf courses, and marinas/yacht clubs. Aside from the fact that these uses must necessarily be conducted outdoors, by definition, they are also seasonally limited and are not characterized by high-volume vehicular activity. They are compatible with and may enhance residential activities in the district. By contrast, those

_____

[5] Use categories in the 2.000, 3.000, 4.000, 6.000, 8.000, 9.000, 10.000, 11.000, 12.000, 18.000, 19.000, 20.000, 21.000, and 24.000 series of the Table of Permissible Uses in the Zoning Regulations. We note that none of the subcategories of uses in the 4.000 or 11.000 categories are allowed in the district, and therefore these categories will not be further used for comparison.

outdoor uses that do have high-volume vehicular activity, such as automobile and motorcycle racing and drive-in movies, are not allowed in the GD-1 district.

The only allowed uses in the GD-1 district in the 8.000 (restaurants, bars, night clubs) use category that also have an outdoor component are outdoor cafes or restaurants, either with table service or allowing consumption of carry-out food outside. These uses are seasonally limited and are not characterized by high-volume vehicular activity; they are compatible with and may enhance residential activities in the district. Those outdoor uses that do have high-volume vehicular activity, such as fast-food service establishments with drive-up windows, are not allowed in the GD-1 district.

The allowed uses in the GD-1 district in the 18.000 (open air markets and horticultural sales) use category both have an outdoor component by definition. They are also seasonally limited and are not characterized by constant high-volume vehicular activity or night-time vehicular activity. They are compatible with residential activities in the district.

The only allowed use in the GD-1 district in the 20.000 (facilities for the deceased) use category that also has an outdoor component are cemeteries. Aside from the fact that this is a outdoor use by definition, such as that of a park, the use of cemeteries is seasonally limited and is not characterized by constant or night-time high-volume vehicular activity. Even the more concentrated vehicular activity of a large funeral is relatively slow, decorous, and limited in time; it is compatible with residential activities in the district.

The allowed uses in the GD-1 district in the 21.000 (day care facilities) use category have the outdoor component of children playing outdoors, on a seasonal basis. They are not characterized by high-volume vehicular activity, and are compatible with residential activities in the district.

The allowed use in the GD-1 district in the 24.000 (commercial greenhouse operations) use category may have an outdoor component, but, like the other outdoor market category, commercial greenhouses with on-premises sales are also seasonally limited and are not characterized by high-volume vehicular activity year-round and after dark. They are compatible with residential activities in the district.

Moreover, a 3,600 square foot convenience store together with a six-fueling-position gas station is not "of the same general character" as 'marine, small equipment and trailer

7

sales,' which is the only use within the 9.000 use category of Motor-Vehicle-Related sales and service operations allowed in the GD-1 district. Rather, marine-related sales, like marinas (use category 6.261), are an exception to the prohibition of gas stations and other motor-vehicle-related sales and service in the GD-1 district under use category 9.600 for the simple functional reason that they must necessarily be located along the lake in order to sell and provide fuel to motorized boats traveling on the lake.

### Judgment Order

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the proposed 3,600-square-foot convenience store with six fueling positions for gasoline sales does not qualify as an "other similar use" in the GD-1 zoning district, concluding this appeal.

Done at Barre, Vermont, this 11th day of October, 2004.

_____
Merideth Wright
Environmental Judge

8